# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**CORNELIUS CANADY,**

    **Plaintiff,**

**vs.**                        **Case No. 4:18cv538-MW-MAF**

**DOCTOR CALABANI,**

    **Defendant.**

_____/

## THIRD REPORT AND RECOMMENDATION[1]

Plaintiff filed a civil rights complaint, ECF No. 1,[2] alleging that the

Defendant, a physician at Hamilton Correctional Institution, failed to provide

medical care to him and, instead, became angry and physically assaulted

him.  ECF No. 1 at 5-6.  Previously, Defendant's amended motion to

---

[1] The first Report and Recommendation, ECF No. 40, recommended granting Defendants' supplemental motion to dismiss based on exhaustion grounds, ECF No. 35. It was rejected and the case remanded to consider new facts which were alleged in Plaintiff's objections.  ECF No. 48.  The second Report and Recommendation, ECF No. 70, recommending denying Defendant's motion to dismiss, ECF No. 66.  That recommendation was accepted without objection.  ECF No. 71.

[2] Plaintiff requested leave to amend, ECF No. 15, which was granted, ECF No. 16, and he subsequently filed a first and second amended complaint.  However, after doing so, Plaintiff then requested that his case proceed on the initial civil rights complaint. ECF No. 20.  That request was granted, ECF No. 22, and the operative pleading is the initial complaint, ECF No. 1.

dismiss, ECF No. 66, was denied, ECF Nos. 70 and 71, and the parties were provided with a discovery period to obtain evidence in support of their claims and defenses. ECF No. 77. Defendant filed a motion for summary judgment in late May 2021. ECF No. 82. Plaintiff was advised of his obligation to file a response in opposition to that motion by June 30, 2021. ECF No. 83. However, no response has been received.[3] Accordingly, Defendant's summary judgment motion is unopposed.

**Allegations of the Complaint, ECF No. 1**

While incarcerated at Hamilton Correctional Institution on July 9, 2018, Plaintiff was attacked by another inmate who hit him in the head with a "master lock" and stabbed him in the stomach. ECF No. 1 at 5. Plaintiff was examined by a nurse who then directed that Plaintiff be seen by a physician. *Id.* He was placed in shackles and handcuffs and taken to the Hamilton C.I. Annex for further examination. *Id.*

---

[3] In April 2021, Plaintiff filed a notice of change of address, ECF No. 80, advising that he had been transferred to Union Correctional Institution. That is Plaintiff's current address of record and where the Order was sent which advised Plaintiff of his obligation to respond to the summary judgment motion. ECF No. 83. The Court has confirmed through the Florida Department of Corrections' website that as of this date, Plaintiff is still housed at Union C.I.

Case No. 4:18cv538-MW-MAF

Plaintiff alleged he was waiting in the doctor's office when Defendant Colombani walked in and took a seat at the desk. *Id.* at 5. Plaintiff said that because the doctor displayed a "lack of ambition" by "just sitting down and writing while" Plaintiff remained in handcuffs and shackles, Plaintiff asked why he was not being provided medical treatment. *Id.* Defendant Colombani then "stood up from his desk and physically assaulted" him. *Id.* Plaintiff contends the Defendant punched him several times in the "face and head." *Id.* Plaintiff alleged that the incident was witnessed by nurse Johnson and an officer who was outside the doctor's office had to come in and "pull the doctor off of" Plaintiff and escort him out of his office. ECF No. 1 at 5-6.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). As noted above, the parties were provided adequate time to conduct discovery.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[4] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

---

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." Sconiers, 946 F.3d at 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

**Relevant Rule 56 Evidence**

On July 9, 2018, correctional officer Kaley Youngblood was assisting in escorting inmates for the evening meal when Plaintiff was observed with obvious injuries "to his head and neck area." Ex. 1 (ECF No. 82-1 at 2). Officer Youngblood "retrieved" Plaintiff "from the sidewalk and questioned" him about his injuries. Id. Plaintiff said that two inmates had attacked him on wing 2 of C-Dormitory.[5] Id. The other two inmates were located, placed in restraints, and taken to administrative confinement. Id.

---

[5] Camera footage from that dormitory was reviewed and confirmed that Plaintiff was assaulted in the face and "upper torso area" and one of the inmates who attacked him was observed to be "in possession of a weapon." ECF No. 82-1 at 2.

Plaintiff was escorted to the medical unit at Hamilton C.I. at approximately 4:00 p.m.  ECF No. 82-1 at 4.  Plaintiff advised nurses Selph and Cooper that two inmates had attacked him about 15 minutes earlier.  *Id.* at 4-5.  He was alert, responsive, and did not appear to be in acute distress.  *Id.* at 5.  He complained of pain to his right ear and the back of his head.  *Id.*  Nurse Selph noted there were lacerations to Plaintiff's right ear, the back of his head, and an abrasion to his right side.  *Id.* at 4.  Two hemotomas to the back of Plaintiff's head were noted on the "head trauma protocol" form.  *Id.*; *see also* ECF No. 82-1 at 9.  Nurse Selph also noted that Plaintiff had minimal bleeding, capillary refill was two seconds or less, and distal pulse was easily palpable.  Ex. 4a (ECF No. 82-5 at 7).

Plaintiff's wounds were cleaned and dressed and he was provided Tylenol for pain.  Ex. 4a (ECF No. 82-5 at 8).  Plaintiff was instructed on wound care and to watch for signs of infection (such as an "increase in redness, swelling, pain, and/or purulent discharge" from the wound).  Plaintiff was also given a tetanus shot.  Ex. 4a (ECF No. 82-5 at 6).

At approximately 4:10 p.m., Defendant Colombani was notified by telephone of Plaintiff's injuries.  ECF No. 82-5 at 10-11; Ex. 4 (ECF No. 82-4 at 4).  Registered nurse Justin Selph relayed the information about

Plaintiff's condition to Defendant Colombani who concluded that "Plaintiff's lacerations were small" and the "bleeding was stopping by itself and [was] not uncontrollable."  ECF No. 82-4 at 4-6.  "Based on Plaintiff's trauma score, there was no need to transport Plaintiff to a designated trauma center," and no indication that "additional diagnostic testing" needed to be performed.  *Id.* at 7.  Although Plaintiff's condition was deemed stable and "not an emergency," because he had been "hit in the head, [Defendant Colombani] still wanted to physically examine Plaintiff."  *Id.*

Plaintiff was brought to the Annex at Hamilton C.I. around 5:30 p.m. ECF No. 82-4 at 7.[6]  Defendant Colombani reviewed Plaintiff's medical records, including the "diagram of injury" form completed by nurses Selph and Cooper.  *Id.* at 7-8.  Defendant Colombani then examined Plaintiff and removed the head dressing, noting there was dried blood.  *Id.* at 8.  Plaintiff informed Defendant Colombani that he had been hit in the head with a lock.  *Id.*  Defendant Colombani observed a small laceration to the occipital area, that "is at the back of the head near the neck."  *Id.*  He also saw a

---

[6] Plaintiff was driven to the annex, but he said that it is within walking distance from the main unit.  ECF No. 82-2 at 16-17.

"'cauliflower'-like injury[7] to the right ear with a small laceration to the outside of the right ear." *Id.* at 8.  Defendant Colombani examined Plaintiff's ear and determined that the bleeding was external and there had been no trauma inside the ear.  *Id.*

Defendant Colombani began to clean Plaintiff's ear using an alcohol-based solution to clean the wound.  *Id.* at 9.  He stated in his declaration that "[b]ecause the solution is alcohol-based, it can sting when applied to a wound."  *Id.*  After he "sprayed the solution on Plaintiff's ear, Plaintiff became irritable and indicated he no longer wanted medical treatment."  *Id.*  "Specifically, Plaintiff repeatedly called [Defendant Colombani] a "stupid mother f*****" and told him, "[S]top. It hurts. Stop this sh** you stupid mother f*****."  *Id.*  With Plaintiff yelling and cursing, Defendant Colombani "left the examining room."  *Id.*  He directed the nurse on duty to re-apply Plaintiff's dressing and then wrote his "clinician orders."  *Id.*  "In addition to the tetanus shot and Tylenol Plaintiff had received earlier, [Defendant Colombani] also ordered Plaintiff one injection of Rocephin  (ceftriaxone sodium), an antibiotic shot used to prevent many kinds of bacterial

---

[7] "Cauliflower ear is the result of a direct blow to the outer ear causing the skin/cartilage on the surface of the ear to swell up and look like a cauliflower (the vegetable)."  ECF No. 82-4 at 9.

infections, including severe or life-threatening forms of meningitis." *Id.* at 9-10. He also ordered "one injection of Solumedrol" which is a cortisone shot used to treat inflammation. *Id.* at 10. At 10:00 p.m. that evening, nurse Skeen filled the "clinician orders, and Plaintiff received the antibiotic and anti-inflammation shots." *Id.*; *see also* ECF No. 82-5 at 13. Defendant Colombani "had no further involvement in Plaintiff's medical care." ECF No. 82-4 at 10.[8]

Plaintiff acknowledged in his deposition that he felt like Defendant Colombani was ignoring him when he walked into the office and "went straight to his desk without greeting" him. ECF No. 82-2 at 18. He testified that he had "no idea" what the Defendant was doing, but was irritated that Defendant Colombani went straight to his desk. *Id.* at 18-19. Plaintiff said he asked if he would "give his nurse permission to treat [him] since he was just ignoring" him. *Id.* at 19. Plaintiff said that Defendant Colombani "jumped up and said don't tell him what to do, he's the doctor, and he knows what's going on." *Id.* Plaintiff said Defendant Colombani was "in [his] face," and poked him. *Id.* When Plaintiff told him to stop, he said that

_____

[8] Although Defendant Colombani's motion for summary judgment includes a denial of "striking Plaintiff," ECF No. 82 at 5, fn.1, Defendant Colombani did not include that denial in his declaration. ECF No. 82-4.

Case No. 4:18cv538-MW-MAF

Defendant Colombani "got aggressive and lost his temper and struck" him.

ECF No. 82-2 at 19.  Plaintiff testified that Defendant Colombani punched

him on the right side of his head "more than once."  *Id.* at 20.  The

correctional officers then "rushed inside" and grabbed Defendant

Colombani "and walked him down the hallway."  *Id.*

Plaintiff also stated in his deposition that at "one point in time,"

Defendant Colombani tried to clean his ear and sprayed a solution.  *Id.* at

20-21.  He did not recall the spray stinging, but he said it made him angry

because "instead of spraying" inside his ear, he said the spray got in his

eye and his face.  *Id.* at 21.

Later in the deposition Plaintiff clarified that it was when the doctor

was cleaning his ear that "it got out of control."  *Id.* at 22.  Plaintiff said he

told the doctor, "Don't be so stupid" when the spray got in his face, "and

that's when he lost his temper and assaulted" Plaintiff.  *Id.* at 22-23.

Plaintiff also acknowledged saying "some words" to Defendant Colombani

like "stop, you're hurting me" or asking why he was treating him like that,

but he denied cursing at Defendant Colombani.  *Id.* at 21.

Plaintiff said that the nurse who was present in the room with him and

Defendant Colombani said that "she was going to file a report" about the

incident. ECF No. 82-2 at 22. She said it was her "first week" there "as a nurse, and she had to witness such an incident." *Id.* Plaintiff testified that the nurse[9] tried to "redo" his bandages after Defendant Colombani left the room. *Id.* at 23-24. He was then returned to Hamilton C.I. confinement. *Id.* at 24.

When questioned as to any injuries suffered after Defendant Colombani hit him, Plaintiff said he did not lose consciousness, vomit, have diarrhea, a seizure, a nosebleed, or a black eye. ECF No. 82-2 at 25-26. He thought that he had a fever, but could not "really remember." *Id.* at 26. Plaintiff also felt numbness on the right side of his head for a few hours, but he did not know if it was from Defendant Colombani or the other inmates hitting him. *Id.* at 27.

Subsequent to the July 9, 2018, incident, Plaintiff was transferred to Jefferson Correctional Institution on August 31, 2018. ECF No. 82-3 at 2. Plaintiff's "Health Information Transfer/Arrival Summary" form was

---

[9] Plaintiff claimed in his complaint that "Nurse Johnson" witnessed the alleged assault. ECF No. 1 at 5. The summary judgment motion argued that there was "no record of a 'Nurse Johnson' at the Annex or Main Unit," but no evidence was submitted to support that argument. ECF No. 82 at 5. Defendant did include a "but see" citation to Exhibit 7, but no pin-point citation was provided to a specific reference in the 75-pages of that exhibit to clarify that citation. ECF No. 82-7.

completed on August 30, 2018, and stated that Plaintiff did not have a medical hold, was not being treated for medical problems, had no impairment, no pending medical appointments, no medications, and was not currently receiving healthcare.  ECF No. 82-5 at 14.

Finally, Defendant Colombani presented the declaration of Albert Booth, a registered nurse who has "worked with Dr. Colombani for multiple years while providing medical care to FDOC prisoners."  Ex. 7 (ECF No. 82-8 at 2).  Mr. Booth stated that on July 9, 2018, he was "assigned to work the day shift, 6:00 am to 6:30 pm at Hamilton Correctional Institution, Annex."  *Id.*  He testified that he has "never witnessed Dr. Colombani mistreat or strike a prisoner."  *Id.*

**Analysis**

**A.   Medical Care**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.

2d 59 (1981) (quoted in <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety."  <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in <u>Collins v. Homestead Corr. Inst.</u>, 452 F. App'x 848, 850-851 (11th Cir. 2011)); <u>Moore v. Hunter</u>, 847 F. App'x 694, 696 (11th Cir. 2021) (stating "[t]he Eighth Amendment imposes duties on prison officials to ensure that inmates receive adequate medical care") (citing <u>Farmer v. Brennan</u>)).

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either situation, there must be a substantial risk of serious harm if the condition is not treated."  <u>Moore</u>, 847 F. App'x at 696; <u>Farrow</u>, 320 F.3d at 1243. Alternatively, "a serious medical need is determined by whether a delay in

treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

No evidence has been submitted which shows that Plaintiff either had a serious medical need or that Defendant Colombani was deliberately indifferent to such a need. The Court agrees with Defendant's argument that Plaintiff did not have a serious medical need. *See* ECF No. 82 at 24. In short, Plaintiff has not shown that there was "a substantial risk of serious harm if" Plaintiff were not treated by Defendant Colombani.

After Plaintiff's altercation with the other inmates, Plaintiff never even requested medical treatment; rather, a correctional officer observed Plaintiff and took him to the medical department. The evidence reveals that Plaintiff received medical care for his injuries within 15 minutes of the altercation with the other inmates. His wounds were evaluated by two nurses, treatment was provided, his wounds cleaned and dressed, he was given pain medication, a tetanus shot, and he was assessed for signs of traumatic brain injury. Despite having no such signs, nurse Selph called Defendant Colombani to advise him of Plaintiff's situation. In an

abundance of caution, Defendant Colombani directed that Plaintiff be brought to him for further evaluation.

Plaintiff was seen by Defendant Colombani within 90 minutes of his treatment by the nurses.  Defendant Colombani reviewed Plaintiff's medical records and the recent treatment notes made by the nurses prior to his examination of Plaintiff.  The evidence demonstrates Plaintiff was impatient and irritated with that process, failing to understand why the Defendant did not immediately look at him.  More importantly, after reviewing the medical records, Defendant Colombani examined Plaintiff and sought to further clean the wound on Plaintiff's ear.  Again, Plaintiff's impatience and irritation with that effort, including his comments to the Defendant, resulted in Defendant Colombani ceasing to further clean the wound.  Nevertheless, he directed his nurse to re-apply Plaintiff's dressing.  He also wrote orders for Plaintiff to receive an antibiotic shot to prevent infection and a cortisone shot to treat inflammation.  Plaintiff received the antibiotic and anti-inflammation shots later that same evening.

Returning to the allegations of the complaint, Plaintiff alleged that instead of providing treatment, Defendant Colombani lost his temper.  ECF No. 1 at 6.  The evidence does not support that allegation for two reasons.

First, Plaintiff had already received medical care by the nurses; Defendant

Colombani's evaluation and treatment was cautionary only.  Second, it is

undisputed that Defendant Colombani provided medical care to Plaintiff.

Furthermore, Plaintiff has not come forward with any evidence

showing that, since that incident, another medical provider diagnosed him

as needing further treatment, nor it is obvious that any additional treatment

should have been provided.[10]  *See* <u>Taylor v. Hughes</u>, 920 F.3d 729, 733

(11th Cir. 2019) (quoted in <u>Patel v. Lanier Cty. Georgia</u>, 969 F.3d 1173,

1188 (11th Cir. 2020)); <u>Farrow</u>, 320 F.3d at 1243.  Plaintiff's belated

suggestion that an M.R.I. should have been ordered, *see* ECF No. 82-2 at

28, is insufficient as a matter of law.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 107,

97 S. Ct. 285, 293, 50 L. Ed. 2d 251 (1976) (stating that "the question

whether an X-ray or additional diagnostic techniques or forms of treatment

is indicated is a classic example of a matter for medical judgment.  A

medical decision not to order an X-ray, or like measures, does not

represent cruel and unusual punishment").  Defendant's motion for

---

[10] Moreover, Plaintiff testified in his deposition that he told Defendant to "stop."   ECF No. 82-2 at 19, 21.  It is disingenuous for Plaintiff to now complain that the Defendant complied with his wishes and stopped cleaning his ear.  *See* ECF No. 82-2 at 23-24.

summary judgment should be granted as to Plaintiff's Eighth Amendment claim for the denial of medical care.

**B**.    **Physical Assault**

The Eighth Amendment also forbids cruel and unusual punishment. Farrow, 320 F.3d at 1242.  A claim that a prison official unnecessarily used excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause.  The "core judicial inquiry" for this claim uses the standard set forth in Whitley v. Albers, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992) (quoting Whitley, at 320-21, 106 S. Ct. at 1085); see also Sconiers v. Lockhart, 946 F.3d 1256, 1268 (11th Cir. 2020) (noting that "[p]epper- spraying and slamming a person to the ground without penological justification certainly offends common standards of decency").

Demonstrating an excessive use of force "requires a prisoner to establish two elements - one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective

element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" Sconiers, 946 F.3d at 1265 (quoting Hudson, 503 U.S. at 8). To meet the subjective element, a prisoner must show that the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." 946 F.3d at 1265 (quoting Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)); *see also* Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010). The objective component "focuses on whether the official's actions were 'harmful enough,' Hudson, 503 U.S. at 8, 112 S. Ct. 995, or 'sufficiently serious,' Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), to violate the Constitution." 946 F.3d at 1265.

Nevertheless, "[u]nder the objective component of an Eighth Amendment claim, the force used, not the injury sustained, is what 'ultimately counts.'" *Id.* at 1267 (quoting Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010)). Analysis of excessive force claims must consider that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins, 559 U.S. at 37, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. 995); *see also* 946 F.3d at 1265. Furthermore, "'routine discomforts' and other de minimis uses of

physical force do not trigger the 'Eighth Amendment's prohibition on cruel and unusual punishments.'" <u>Hudson</u>, 503 U.S. at 9-10, 112 S. Ct. at 1000 (quotation marks omitted) (quoted in <u>Thompson v. Smith</u>, 805 F. App'x 893, 901 (11th Cir. 2020)).

> The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *[Wilkins v. Gaddy, 559 U.S. 34],* at 37-38, 130 S. Ct. 1175. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary."

<u>Sconiers</u>, 946 F.3d at 1265-66 (quoting <u>Wilkins</u>, 559 U.S. at 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010)).

In this case, there is a genuine dispute of material fact as to whether Defendant Colombani punched Plaintiff. Plaintiff alleged[11] that the Defendant punched him in the face and head because he asked a question. Plaintiff did not respond to the summary judgment motion with

---

[11] Statements made by a plaintiff in a verified complaint are properly treated as testimony in ruling on a summary judgment motion. <u>Sears v. Roberts</u>, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing <u>United States v. Stein</u>, 881 F.3d 853, 857 (11th Cir. 2018) (noting that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.")). Plaintiff's complaint was sworn under penalty of perjury. ECF No. 1 at 7.

Case No. 4:18cv538-MW-MAF

any evidence in support of that allegation, but Defendant Colombani

provided excerpts of Plaintiff's deposition testimony.  There, Plaintiff said

that when he told the Defendant to not "be so stupid" after spraying Plaintiff

in the face, Defendant Colombani "lost his temper and assaulted" him.

ECF No. 82-2 at 23.  Plaintiff testified that he told the Defendant "to stop

and get his hands off of" him, and the Defendant "just struck [him], punched

[him]." *Id.* at 20.

Defendant Colombani has *argued* that he did not strike Plaintiff.  ECF

No. 82 at 5, n.1.  That argument is not evidence; notably, the Defendant did

not include such a denial in his declaration.  Nevertheless, Defendant

Colombani did submit the declaration of nurse Booth who stated that on the

day in question (July 9, 2018), he was working the day shift at Hamilton C.I.

Annex, presumably with Defendant Colombani.  ECF No. 82-8 at 2.  Nurse

Booth testified that he had "never witnessed Dr. Colombani mistreat or

strike a prisoner."  *Id.*  Accordingly, Defendant Colombani produced some

evidence as to this issue.  Thus, whether Defendant Colombani punched

Plaintiff is genuinely disputed.

Even so, Defendant Colombani argues that he cannot be held liable

under § 1983 because he was not acting under color of state law.  ECF No.

82 at 12.  Defendant Colombani contends that he "clearly was acting in a private capacity at the time of the alleged battery."  *Id.* at 13.

It is well established that to prevail on a claim brought "pursuant to § 1983, the plaintiff must allege that a person deprived [him] of a federal or constitutional right and that the person was acting under color of law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923-24, 64 L. Ed. 2d 572 (1980) (cited in Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir. 1995)).  "The Supreme Court has defined 'acting under color of law' as acting with power possessed by virtue of the defendant's employment with the state."  Edwards, 49 F.3d at 1522 (citing West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988)). "Not all actions by state employees are acts under color of law."  Edwards, 49 F.3d at 1523.  "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual."  *Id.* at 1523 (citing Monroe v. Pape, 365 U.S. 167, 184, 81 S. Ct. 473, 482, 5 L. Ed. 2d 492 (1961)).

In Almand v. DeKalb Cty., Ga., 103 F.3d 1510, 1511 (11th Cir. 1997), the Eleventh Circuit Court of Appeals held that Bryant, a police officer, was "acting as a private person, not a state actor under color of state law, when

he forced his way into Almand's home and, overcoming her resistance by force, raped her." Almand, 103 F.3d at 1514. Although he initially became acquainted with the woman in his official capacity while investigating the disappearance of Almond's daughter, on the occasion in question, "Bryant initially gained entry to Almand's apartment on the pretense of discussing police business with her—the progress of the investigation into Almand's daughter's rape." *Id.* at 1514. However, after the officer "began making sexual advances," she asked him to leave. *Id.* He did so, but then forced his way inside the house, and her. *Id.* The Court held that when the officer "reentered the apartment by forcibly breaking in, he was no different from any other ruffian." 103 F.3d at 1515. His "act of breaking into the apartment and, by force, raping" the woman "was a private act not accomplished because of 'power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law.'" *Id.* (citations omitted).

In another case, a state correctional officer returned home to find her 19-year old daughter in a compromising situation with a young man of similar age. Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1263 (11th Cir. 2012). The young man "had only enough time to dash into the

bedroom closet wearing nothing but a look of surprise." Butler, 685 F.3d at

1263. After discovering the young man in the closet, the officer (who was

wearing her uniform and gun belt) yelled at him, "punched him one time,"

and then drew her gun and told him "if he moved or did not follow her

commands, she would shoot him." 685 F.3d at 1263. She then handcuffed

him, forced him to his knees "for a prolonged period," and continued to

threaten him. *Id.* at 1263-64. Again, the Court of Appeals held that the

officer's actions were not committed under color of state law; instead, she

was in the same situation as any other "private individual returning home

from work." 685 F.3d at 1267. Her "discovery of a naked man in her

daughter's closet was not the result of an official search by a law

enforcement officer." *Id.* Thereafter, she was "acting as an enraged

parent" and not as an officer. *Id.*

Similarly, in a third case, magistrate judge Murry Bowman was

deemed to have been acting in his individual capacity when he reported the

theft of his dog "using his government-issued SouthernLINC

communications system." Myers v. Bowman, 713 F.3d 1319, 1330 (11th

Cir. 2013). Although his report of the theft resulted in the arrest of his

daughter's ex-fiancé, the Court found that Bowman "did not invoke his

authority as a magistrate judge to cause the arrest." Myers, 713 F.3d at 1330. Notably, the "theft occurred in connection with a private dispute and not a matter that was before Murry in his official capacity as a magistrate judge . . . ." 713 F.3d at 1330.

Those cases are clearly distinguishable from this one, and from Griffin v. City of Opa-Locka, 261 F.3d 1295, 1304-05 (11th Cir. 2001). In Griffin, the Court concluded that Earnie Neal utilized "his authority as City Manager to facilitate the assault" and, thus, he was found to have been "acting under color of law at the time of the assault." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1305 (11th Cir. 2001). In particular, Neal "invoked his authority as City Manager to create the opportunity to be alone with Griffin, to take her home, and then to rape her." Griffin, 261 F.3d at 1304.

In West v. Atkins, 487 U.S. 42, 54, 108 S. Ct. 2250, 2258, 101 L. Ed. 2d 40 (1988), the Supreme Court held that "a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury." Doctor Atkins was a private physician, but hired pursuant to a contract to provide orthopedic services to inmates at the

Central Prison Hospital.  West, 487 U.S. at 44, 108 S. Ct. at 2252.  In

deciding whether Doctor Atkins was "acting under color of state law," the

Court reiterated the "traditional definition of acting under color of state law"

which means that the defendant "exercised power 'possessed by virtue of

state law and made possible only because the wrongdoer is clothed with

the authority of state law.'"  West, 487 U.S. at 49, 108 S. Ct. at 2255

(quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043,

85 L.Ed. 1368 (1941)).

"[S]tate employment is generally sufficient to render the defendant a

state actor."  West, 487 U.S. at 490, 108 S. Ct. at 2255 (citation omitted).

"It is firmly established that a defendant in a § 1983 suit acts under color of

state law when he abuses the position given to him by the State."  West,

487 U.S. at 49-50, 108 S. Ct. at 2255-56 (citation omitted); see also Butler,

685 F.3d at 1268 (citing Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303

(11th Cir. 2001)).  "What [§ 1983] seeks to prevent is the '[m]isuse of

power, possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law ....'"  Dunwoody

Homeowners Ass'n, Inc. v. DeKalb Cnty., Ga., 887 F.2d 1455, 1460 (11th

Cir. 1989) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)) (quoted in Butler, 685 F.3d at 1268)).

Here, Plaintiff was only brought into the Defendant's presence because the Defendant was employed to provide medical treatment to prisoners in the Florida Department of Corrections.  In the course of performing his responsibilities pursuant to his employment, Defendant Colombani directed that Plaintiff be brought to him at the Annex.  Plaintiff's testimony is that while providing medical treatment to him (a state prisoner), on prison grounds, in a prison medical facility office, Defendant Colombani lost his temper and physically struck Plaintiff.  If that testimony is true, the Defendant abused the power given to him by the State of Florida and, thus, must be deemed to be a "state actor."

Moreover, there is no penological justification for punching a prisoner in that scenario.  Rather, it appears that the force was "maliciously and sadistically [applied] for the very purpose of causing harm."  Furthermore, as the Defendant recognizes, *de minimis* uses of physical force are excluded from constitutional recognition, "provided that the use of force is not of a sort repugnant to the conscience of mankind."  ECF No. 82 at 19. Additionally, as the Supreme Court has emphasized:

Injury and force, however, are only imperfectly correlated, and it
is the latter that ultimately counts. An inmate who is gratuitously
beaten by guards does not lose his ability to pursue an
excessive force claim merely because he has the good fortune
to escape without serious injury.

Wilkins, 559 U.S. at 38, 130 S. Ct. at 1178.

Here, Plaintiff's evidence is that Defendant punched him on the right side of his head "more than once."  This was an isolated incident, but it was not a single slap and it was not administered as a ""a good-faith effort to maintain or restore discipline." Wilkins, 559 U.S. at 40, 130 S.Ct. at 1180 (quoted in Hicks v. Cook, No. CV 20-00445-JB-B, 2021 WL 3076778, at *4 (S.D. Ala. June 24, 2021), report and recommendation adopted, No. CV 20-00445-JB-B, 2021 WL 3074177 (S.D. Ala. July 20, 2021)).  Because a reasonable jury could conclude that the force was employed maliciously or sadistically, and that punching a prisoner who is receiving medical care is repugnant to the conscience of mankind, the motion for summary judgment as to the excessive force claim should be denied.

**C**.    **Damages**

Defendant Colombani also contends that "Plaintiff failed to prove he suffered more than *de minimis* physical injuries entitling him to compensatory damages."  ECF No. 82 at 9.  Defendant argues that the

evidence reveals "Plaintiff did not suffer any physical injuries as a result of Colombani's alleged conduct." *Id.* at 11. Moreover, because Plaintiff did not request compensatory damages, "he has waived his right to recover compensatory damages." *Id.* In addition, Defendant argued that "Plaintiff's complaint cannot be liberally construed as requesting nominal damages." *Id.*

Those arguments are immaterial because the only damages Plaintiff requested were punitive damages. ECF No. 1 at 6. Plaintiff's request for punitive damages is not barred by 42 U.S.C. § 1997e(e), even in the absence of physical injury. Hoever v. Marks, 993 F.3d 1353, 1362 (11th Cir. 2021) (noting that punitive damages "do not compensate plaintiffs for injuries suffered" but, rather, are designed "to punish the defendant for his willful or malicious conduct and to deter others from similar behavior"). The argument to dismiss compensatory or nominal damages should be rejected.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendant Colombani's motion for summary judgment, ECF No. 82, be **GRANTED in part** as to the claim for the denial of medical care, but **DENIED** as to the excessive force claim. It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings on the surviving Eighth Amendment claim.

**IN CHAMBERS** at Tallahassee, Florida, on August 6, 2021.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**